IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: THE ESTATE OF<br>BUDGET FINANCE CORP,<br><br>    Debtor in Possession,<br>--------------------------------------------------<br><br>JAMES RILEY, not individually, but<br>solely in his Capacity as Special Litigation<br>Counsel, on behalf of the Estate of<br>BUDGET FINANCE CORPORATION, a<br>Reorganized Debtor<br><br>    Plaintiff,<br>  vs.<br>SIKICH LLP, and V. GREGORY McKNIGHT,<br><br>    Defendants. | 09 BK 030450 |

## COMPLAINT

Plaintiff, JAMES RILEY, not individually but solely in his Capacity as Special Litigation Counsel, on behalf of the Estate of Budget Finance Corporation, a Reorganized Debtor, by his attorneys O'CONNOR LAW GROUP, LLC, and for the Complaint against Defendants Sikich LLP (herein "Sikich"), and V. Gregory McKnight (herein "McKnight"), states:

### Count I – Breach of Contract

1.     On March 25, 2010, the US Bankruptcy Court approved a Plan of Liquidation in the matter of In Re The Estate of Budget Finance Corporation (herein "Budget"), currently pending in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, under Case No. 09- 30450.

1

2. On April 5, 2010, the US Bankruptcy Court approved James Riley as Special Litigation Counsel.

3. Mr. James Riley, as Special Litigation Counsel, retained Plaintiff's counsel, Bryan J. O'Connor, to prosecute any claims the Plaintiff may have against the Defendant for malpractice, breach of contract, and any other related claims. Bryan J. O'Connor is a disinterested person as set forth in 11 U.S. C. § 101 (14). See Affidavit, Exhibit C.

4. Sikich is a limited liability partnership doing business in northern Illinois.

5. At all times mentioned herein, Defendant McKnight was a partner, employee and agent of Sikich.

6. Budget is, or was an Illinois corporation with its corporate office in Aurora, IL.

7. From 2007 through 2009, and for many years prior thereto, Budget was in the business of providing automobile loans, loans in connection with installment purchases of appliances and other items, signature loans and consumer loans to individuals and small businesses.

8. Budget operated on a fiscal tax year basis ending July 31st of each year, including 2007 and 2008.

9. For a number of years, including 2007 and 2008, Budget and Sikich entered into written contracts for auditing services to be provided by Sikich. Copies of these contracts are attached respectively as Exhibits A and B and attached hereto.

10. Defendant McKnight was the partner at Sikich in charge of the services being provided to Budget.

11. In accord with these contracts, Sikich, and its employees and agents, including McKnight, contractually promised to conduct its audits and to express financial opinions concerning Budget's financial statements in accordance with generally accepted accounting principles. Sikich, and its employees and agents, including McKnight, further contractually promised that if it expressed any opinions other than "unqualified" it would first discuss such an anticipated opinion with Budget's president, Robert Reuland.

12. Sikich, and its employees and agents, including McKnight, thus owed a duty to Budget to comply with its contractual promises with respect to the conduct of audits and expression of financial opinions, and the rendering of other accounting services to Budget.

13. Sikich and McKnight conducted audits, prepared opinion letters and rendered other accounting services for Budget for fiscal years 2007 and 2008.

14. Sikich and McKnight violated generally accepted accounting principles in connection with the audits, opinion letters and other accounting services rendered to Budget in fiscal years 2007 and 2008, in one or more of the following respects:

   a. Included automobiles on the corporation's financial statements as corporation assets when the automobiles were not owned by Budget but rather were owned individually by officers of Budget, and acquiesced in the use of Budget corporation funds for the purchase of non-corporation assets, thereby causing direct financial damage to the corporation.

   b. Included as current receivables on the corporation's financial statements items entitled "installment loans" and "officer advances" certain payments to Robert Reuland which Defendants should have known were simply payments by the corporation to Reuland, for which there was never any repayment schedule or other evidence of intent to repay, thereby causing direct financial damage to the corporation.

  c. Included as a current receivable on the corporation's financial statements in 2008 an installment note owed to Budget by Home Merchandising and/or Edgar and Joseph Perdomo in an approximate amount of $88,906.93, when this specific note was long delinquent, and had previously been deducted and written off as a bad loan, on the ground that the installment note was a "moral obligation."

  d. Included as an asset of the corporation the cash surrender of a certain life insurance policy No.80182234, issued by Lincoln Benefit Life, despite the fact that Budget was neither the owner, insured or beneficiary of the policy.

  e. Included as an asset of the corporation the cash surrender value of a certain life insurance policy No. G1183645, when Defendants were aware that the corporate minutes expressly declared that this insurance policy was for the benefit of the estate of Robert Reuland, and there was no documentation or evidence that Budget was a beneficiary of the policy.

  f. Failed to comply with generally accepted accounting principles in estimating the collectability of loans.

  g. Failed to conduct the audits and prepare financial statements for Budget in fiscal years 2007 and 2008 in accordance with generally accepted accounting principles, resulting in a significant overstatement of the corporation's assets and net worth.

  h. Issued an unqualified opinion letter for fiscal years 2007 and 2008 when Defendants knew or should have known that the value of the corporation was significantly overstated, and Budget was likely to become insolvent in a short period of time.

  15. All actions or omissions by McKnight were committed in the course and scope of his duties and employment with Sikich.

  16. These violations by Defendants of generally accepted accounting principles in connection with the audits, opinion letters and other accounting services rendered to Budget in fiscal years 2007 and 2008, amounted to a breach of contract by Defendants.

  17. As a result of Defendants' breach of their contractual duties and violation of generally accepted accounting principles in connection with the audits, opinion letters and other accounting services rendered to Budget in fiscal years 2007 and 2008, Budget sustained direct financial losses in the use of corporation funds for the purchase and/or use of automobiles for the

personal use of officers and direct payments to the corporation president which were not actual loans.

18. As a result of Defendants' breach of their contractual duties and violation of generally accepted accounting principles in connection with the audits, opinion letters and other accounting services rendered to Budget in fiscal years 2007 and 2008, Budget's assets were significantly overstated, which allowed Budget to continue operating longer and incurring greater losses than it otherwise would have been able to do, thus damaging the corporation as well as investors and creditors.

19. As a result of Defendants' breach of their contractual duties and violation of generally accepted accounting principles in connection with the audits, opinion letters and other accounting services rendered to Budget in fiscal years 2007 and 2008, Budget sustained direct financial damage by paying monies to Defendants for auditing and other accounting services which were in breach of Defendants' written contractual obligations and in violation of generally accepted accounting principles.

WHEREFORE, Plaintiff, JAMES RILEY, not individually but solely in his Capacity as Special Litigation Counsel, on behalf of the Estate of BUDGET FINANCE CORPORATION, a Reorganized Debtor, by his attorneys, O'CONNOR LAW GROUP, LLC, demands judgment against Defendants Sikich LLP, and V.Gregory McKnight, and each of them, in an amount which a court and/or jury deem fair and reasonable, but in excess of $75,000.00, plus costs of suit.

### Count II– Professional Negligence/Financial Malpractice

20. Plaintiff restates and incorporates paragraphs 1 through 11 inclusive of Count I as Paragraph 20 of Count II.

21. Sikich and McKnight conducted audits, prepared opinion letters and rendered other accounting services for Budget for fiscal years 2007 and 2008.

22. Defendants owed a duty to Budget to conduct its audits and to express financial opinions concerning Budget's financial statements in accordance with generally accepted accounting principles.

23. Defendants Sikich and McKnight committed various acts or omissions of negligence and financial malpractice, and violated generally accepted accounting principles in connection with the audits, opinion letters and other accounting services rendered to Budget in fiscal years 2007 and 2008, in one or more of the following respects:

   a. Included automobiles on the corporation's financial statements as corporation assets when the automobiles were not owned by Budget but rather were owned individually by officers of Budget, and acquiesced in the use of Budget corporation funds for the purchase of non-corporation assets, thereby causing direct financial damage to the corporation.

   b. Included as current receivables on the corporation's financial statements items entitled "installment loans" and "officer advances" certain payments to Robert Reuland which Defendants should have known were simply payments by the corporation to Reuland, for which there was never any repayment schedule or other evidence of intent to repay, thereby causing direct financial damage to the corporation.

   c. Included as a current receivable on the corporation's financial statements in 2008 an installment note owed to Budget by Home Merchandising and/or Edgar and Joseph Perdomo in an approximate amount of $88,906.93, when this specific note was long delinquent, and had previously been deducted and written off as a bad loan, on the ground that the installment note was a "moral obligation."

   d. Included as an asset of the corporation the cash surrender of a certain life insurance policy No.80182234, issued by Lincoln Benefit Life, despite the fact that Budget was neither the owner, insured or beneficiary of the policy.

   e. Included as an asset of the corporation the cash surrender value of a certain life insurance policy No. G1183645, when Defendants were aware that the corporate minutes expressly declared that this insurance policy was for the benefit of the estate of Robert Reuland, and there was no documentation or evidence that Budget was a beneficiary of the policy.

6

  f. Failed to comply with generally accepted accounting principles in estimating the collectability of loans.

  g. Failed to conduct the audits and prepare financial statements for Budget in fiscal years 2007 and 2008 in accordance with generally accepted accounting principles, resulting in a significant overstatement of the corporation's assets and net worth.

  h. Issued an unqualified opinion letter for fiscal years 2007 and 2008 when Defendants knew or should have known that the value of the corporation was significantly overstated, and Budget was likely to become insolvent in a short period of time.

  24. All actions or omissions by McKnight were committed in the course and scope of his duties and employment with Sikich.

  25. These acts or omissions of professional negligence and financial malpractice were material violations of generally accepted accounting principles.

  26. As a proximate result of Defendants' acts or omissions of professional negligence and financial malpractice were material violations of generally accepted accounting principles in connection with the audits, opinion letters and other accounting services rendered to Budget in fiscal years 2007 and 2008, Budget sustained direct financial losses in the use of corporation funds for the purchase and/or use of automobiles for the personal use of officers and direct payments to the corporation president which were not actual loans.

  27. As a proximate result of Defendants' acts or omissions of professional negligence and financial malpractice were material violations of generally accepted accounting principles in connection with the audits, opinion letters and other accounting services rendered to Budget in fiscal years 2007 and 2008, Budget's assets were significantly overstated, which allowed Budget to continue operating longer and incurring greater losses than it otherwise would have been able to do, thus damaging the corporation as well as investors and creditors.

28.  As a proximate result of Defendants' acts or omissions of professional negligence and financial malpractice, Budget sustained direct financial damage by paying monies to Defendants for auditing and other accounting services which were in breach of Defendants' written contractual obligations and in violation of generally accepted accounting principles.

WHEREFORE, Plaintiff, JAMES RILEY, not individually but solely in his Capacity as Special Litigation Counsel, on behalf of the Estate of BUDGET FINANCE CORPORATION, a Reorganized Debtor, by his attorneys, O'CONNOR LAW GROUP, LLC, demands judgment against Defendants Sikich LLP, and V.Gregory McKnight, and each of them, in an amount which a court and/or jury deem fair and reasonable, but in excess of $75,000.00, plus costs of suit.

Bryan J O'Connor, Attorney for Plaintiff

/s/ Eileen M. O'Connor
Eileen M. O'Connor,

Attorney for Plaintiff JAMES RILEY, not
individually, but solely in his Capacity
as Special Litigation Counsel, on behalf of the
Estate of BUDGET FINANCE CORPORATION, a
Reorganized Debtor.

**O'Connor Law Group, LLC**
221 North LaSalle Street
Suite 1050
Chicago, IL 60601
(312) 236-1814

*Certified Public Accountants & Advisors*



998 Corporate Boulevard • Aurora, IL 60502

Members of American Institute of
Certified Public Accountants &
Illinois CPA Society

August 2, 2007

Mr. Robert Reuland, President
Budget Finance Corporation
44 E. Galena Boulevard
Aurora, IL 60505

Dear Bob:

We are pleased to confirm our understanding of the services we are to provide for Budget Finance Corporation for the year ended July 31, 2007.

We will audit the balance sheet of Budget Finance Corporation as of July 31, 2007, and the related statements of income, retained earnings, and cash flows for the year then ended.

The objective of our audit is the expression of an opinion about whether your financial statements are fairly presented, in all material respects, in conformity with U.S. generally accepted accounting principles. Our audit will be conducted in accordance with U.S. generally accepted auditing standards and will include tests of your accounting records and other procedures we consider necessary to enable us to express such an opinion. If our opinion is other than unqualified, we will discuss the reasons with you in advance. If, for any reason, we are unable to complete the audit or are unable to form or have not formed an opinion, we may decline to express an opinion or to issue a report as a result of this engagement

Our procedures will include tests of documentary evidence supporting the transactions recorded in the accounts, tests of the physical existence of inventories, and direct confirmation of certain assets and liabilities by correspondence with selected customers, creditors, and financial institutions. We will also request written representations from your attorneys as part of the engagement. At the conclusion of our audit, we will require certain written representations from you about the financial statements and related matters.

630-566-8400 • [FAX] 630-566-8401 • www.sikich.com
Sikich LLP



PLAINTIFF'S
EXHIBIT
A

Budget Finance Corporation
August 2, 2007
Page 2

An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements; therefore, our audit will involve judgment about the number of transactions to be examined and the areas to be tested. We will plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement, whether from (1) errors, (2) fraudulent financial reporting, (3) misappropriation of assets, or (4) violations of laws or governmental regulations that are attributable to the entity or to acts by management or employees acting on behalf of the entity. Because an audit is designed to provide reasonable, but not absolute, assurance and because we will not perform a detailed examination of all transactions, there is a risk that material misstatements may exist and not be detected by us. In addition, an audit is not designed to detect immaterial misstatements or violations of laws or governmental regulations that do not have a direct and material effect on the financial statements. However, we will inform you of any material errors that come to our attention, and we will inform you of any fraudulent financial reporting or misappropriation of assets that comes to our attention. We will also inform you of any violations of laws or governmental regulations that come to our attention, unless clearly inconsequential. Our responsibility as auditors is limited to the period covered by our audit and does not extend to any later periods for which we are not engaged as auditors.

Our audit will include obtaining an understanding of the entity and its environment, including internal control, sufficient to assess the risks of material misstatement of the financial statements and to design the nature, timing, and extent of further audit procedures. An audit is not designed to provide assurance on internal control or to identify deficiencies in internal control. However, during the audit, we will communicate to you and those charged with governance internal control related matters that are required to be communicated under professional standards.

You are responsible for establishing and maintaining internal controls, including monitoring ongoing activities; for the selection and application of accounting principles; and for the fair presentation in the financial statements of financial position, results of operations, and cash flows in conformity with U.S. generally accepted accounting principles. You are also responsible for management decisions and functions; for designating an individual with suitable skill, knowledge, or experience to oversee the tax services and any other nonattest services we provide; and for evaluating the adequacy and results of those services and accepting responsibility for them.

You are responsible for making all financial records and related information available to us and for the accuracy and completeness of that information. Your responsibilities include adjusting the financial statements to correct material misstatements and confirming to us in the management representation letter that the effects of any uncorrected misstatements aggregated by us during the current engagement and pertaining to the latest period presented are immaterial, both individually and in the aggregate, to the financial statements taken as a whole.

Budget Finance Corporation
August 2, 2007

Page 3

You are responsible for the design and implementation of programs and controls to prevent and detect fraud, and for informing us about all known or suspected fraud affecting the company involving (1) management, (2) employees who have significant roles in internal control, and (3) others where the fraud could have a material effect on the financial statements. Your responsibilities include informing us of your knowledge of any allegations of fraud or suspected fraud affecting the company received in communications from employees, former employees, regulators, or others. In addition, you are responsible for identifying and ensuring that the entity complies with applicable laws and regulations.

During the course of our engagement, we will request information and explanations from management regarding the Company's operations, internal controls, future plans, specific transactions, and accounting systems and procedures. At the conclusion of our engagement, we will require, as a precondition to the issuance of our report, that management provide certain representations in a written representation letter. The procedures we will perform in our engagement and the conclusions we reach as a basis for our report will be heavily influenced by the written and oral representations that we receive from management. In view of the foregoing, the company agrees to release our firm and its personnel from any liability and costs relating to our services under this letter resulting from false or misleading representations made to us by any member of the company's management.

Management of the Company has the sole responsibility for maintaining appropriate documentation in support of its financial activities as dictated by its internal and external requirements, including those of regulatory bodies. In the course of our audit we accumulate and retain for limited periods in the form of working papers certain documentation supporting the procedures performed and findings in the course of those procedures. These working papers are solely our property and remain as such until disposed by us in accordance with our record retention policies. As an accommodation, we may, upon request by you or authorized representatives in appropriate circumstances, make information available to you, or your authorized representatives from our files. However, beyond the extent necessary to meet requirements imposed on us by professional standards and regulatory bodies, we assume no responsibility for maintenance of documentation supporting client financial activities.

We understand that your employees will prepare all cash and other confirmations we request and will locate any documents selected by us for testing.

You are responsible for management decisions and functions, and for designating a competent employee to oversee these services. You are responsible for evaluating the adequacy and results of the services performed and accepting responsibility for the results. You are also responsible for establishing and maintaining internal controls, including monitoring ongoing activities. The nonattest services expected to be performed during our audit of the financial statements as of and for the year ended July 31, 2007 are as follows:

Budget Finance Corporation
August 2, 2007
Page 4

- Discuss with management any questions regarding your accounting methods and financial procedures arising during the course of this engagement;

- Assist you in making such adjustments to your records as we mutually deem necessary based on information that comes to our attention;

- Prepare of the corporation's federal and Illinois income tax returns;

- Provide monthly accounting and bookkeeping services at your office (for August 31, 2006 - July 31, 2007 and August 31, 2007 - July 31, 2008);

- Prepare the annual DFI report;

- Prepare your personal income tax returns;

- Assist management with various matters throughout the year;

Our fees for these services will be based on our regular hourly rates in effect which includes out-of-pocket costs such as report production, typing, postage, etc. At the present time, we do not expect our fee to exceed $17,300. Services will be invoiced to you from time to time as work progresses. Payments for all services are due upon receipt of invoice. Interest will be charged on all accounts which have not been paid within 30 days after they are billed, at a rate of 1 1/2% per month or any fraction of a month. The annual percentage rate is 18%. In accordance with our firm policies, work may be suspended if your account becomes 30 days or more overdue and will not be resumed until your account is paid in full. If we elect to terminate our services for nonpayment, our engagement will be deemed to have been completed upon written notification of termination, even if we have not completed our report. You will be obligated to compensate us for all time expended and to reimburse us for all out-of-pocket expenditures through the date of termination.

You may request that we perform additional services not contemplated by this engagement letter. If this occurs, we will communicate with you regarding the scope of the additional services and the estimated fees. We also may issue a separate engagement letter covering the additional services. In the absence of any other written communication from us documenting such additional services, our services will continue to be governed by the terms of this engagement letter.

You agree that our maximum liability to you for any negligent errors or omissions committed by us in the performance of the engagement will be limited to one times the amount of our fees for this engagement, except to the extent determined to result from our gross negligence or willful misconduct.

Budget Finance Corporation
August 2, 2007                                                                                                    Page 5

If any dispute, controversy or claim arises in connection with the performance or breach of this agreement, either party may, on written notice to the other party, request that the matter be mediated. Such mediation will be conducted by a mediator appointed by and pursuant to the Rules of the American Arbitration Association or such other neutral facilitator acceptable to both parties. Both parties will exert their best efforts to discuss with each other in good faith their respective positions in an attempt to finally resolve such dispute or controversy.

Each party may disclose any facts to the other party or the mediator which it, in good faith, considers necessary to resolve the matter. All such discussions, however, will be for the purpose of assisting in settlement efforts and will not be admissible in any subsequent litigation against the disclosing party. Except as agreed by both parties, the mediator will keep confidential all information disclosed during negotiations.

The mediation proceedings will conclude within sixty days from receipt of the written notice unless extended or terminated sooner by mutual consent. Each party will be responsible for its own expenses. The fees and expenses of the mediator, if any, will be borne equally by the parties.

We appreciate the opportunity to be of service to you and believe this letter accurately summarizes the significant terms of our engagement. If you have any questions, please let us know. If you agree with the terms of our engagement as described in this letter, please sign the enclosed copy and return it to us.

Very truly yours,

Sikich LLP
By: V. Gregory McKnight, CPA, ABV
Partner

RESPONSE:

This letter correctly sets forth the understanding of Budget Finance Corporation

By: _____

Title: _____

Date: August 5, 2007



*Certified Public Accountants & Advisors*

Members of American Institute of
Certified Public Accountants &
Illinois CPA Society

998 Corporate Boulevard • Aurora, IL 60502

rr
7/15/08

July 2, 2008

Mr. Robert Reuland, President
Budget Finance Corporation
44 E. Galena Boulevard
Aurora, Illinois 60505

Dear Bob:

We are pleased to confirm our understanding of the services we are to provide for Budget Finance Corporation for the year ended July 31, 2008. We will audit the balance sheet of Budget Finance Corporation as of July 31, 2008, and the related statements of income, retained earnings, and cash flows for the year then ended.

We will also prepare the company's federal and state income tax returns for the year ended July 31, 2008. The nonattest services expected to be performed during our audit of the financial statements for the year ended July 31, 2009 are as follows:

1. Preparing certain computations (i.e., current and deferred income tax provisions)
2. Assistance with the monthly closing of the books

**Audit Objective**

The objective of our audit is the expression of an opinion about whether your financial statements are fairly presented, in all material respects, in conformity with U.S. generally accepted accounting principles. Our audit will be conducted in accordance with U.S. generally accepted auditing standards and will include tests of your accounting records and other procedures we consider necessary to enable us to express such an opinion. If our opinion is other than unqualified, we will discuss the reasons with you in advance. If, for any reason, we are unable to complete the audit or are unable to form or have not formed an opinion, we may decline to express an opinion or to issue a report as a result of this engagement.

**Audit Procedures – General**

Our procedures will include tests of documentary evidence supporting the transactions recorded in the accounts, tests of the physical existence of inventories, and direct confirmation of certain assets and liabilities by correspondence with selected customers, creditors, and financial institutions. We will also request written representations from your attorneys as part of the engagement and they may bill you for responding to this inquiry. At the conclusion of our audit, we will require certain written representations from you about the financial statements and related matters.

630-566-8400 • [FAX] 630-566-8401 • www.sikich.com
Sikich LLP



PLAINTIFF'S
EXHIBIT
B

Budget Finance Corporation
July 2, 2008                                                                                                    Page 2


An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements; therefore, our audit will involve judgment about the number of transactions to be examined and the areas to be tested. We will plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement, whether from (1) errors, (2) fraudulent financial reporting, (3) misappropriation of assets, or (4) violations of laws or governmental regulations that are attributable to the entity or to acts by management or employees acting on behalf of the entity.

Because an audit is designed to provide reasonable, but not absolute, assurance and because we will not perform a detailed examination of all transactions, there is a risk that material misstatements may exist and not be detected by us. In addition, an audit is not designed to detect immaterial misstatements or violations of laws or governmental regulations that do not have a direct and material effect on the financial statements. However, we will inform the appropriate level of management of any material errors that come to our attention, and we will inform you or appropriate level of management of any fraudulent financial reporting or misappropriation of assets that comes to our attention. We will also inform you or the appropriate level of management of any violations of laws or governmental regulations that come to our attention, unless clearly inconsequential. Our responsibility as auditors is limited to the period covered by our audit and does not extend to any later periods for which we are not engaged as auditors.

We may from time to time, and depending on the circumstances, use third-party service providers in serving your account. We may share confidential information about you with these service providers, but remain committed to maintaining the confidentiality and security of your information. Accordingly, we maintain internal policies, procedures, and safeguards to protect the confidentiality of your personal information. In addition, we will secure confidentiality agreements with all service providers to maintain the confidentiality of your information and we will take reasonable precautions to determine that they have appropriate procedures in place to prevent the unauthorized release of your confidential information to others. In the event that we are unable to secure an appropriate confidentiality agreement, you will be asked to provide your consent prior to the sharing of your confidential information with the third-party service provider. Furthermore, we will remain responsible for the work provided by any such third-party service providers.

**Audit Procedures – Internal Control**

Our audit will include obtaining an understanding of the entity and its environment, including internal control, sufficient to assess the risks of material misstatement of the financial statements and to design the nature, timing, and extent of further audit procedures. An audit is not designed to provide assurance on internal control or to identify deficiencies in internal control. However, during the audit, we will communicate to you and those charged with governance internal control related matters that are required to be communicated under professional standards.

Budget Finance Corporation
July 2, 2008                                                                                                          Page 3

**Management Responsibilities**

Management is responsible for establishing and maintaining internal controls, including monitoring ongoing activities; for the selection and application of accounting principles; and for the fair presentation in the financial statements of financial position, results of operations, and cash flows in conformity with U.S. generally accepted accounting principles. Management is also responsible for management decisions and functions; for designating an individual with suitable skill, knowledge, or experience to oversee the tax services and any other nonattest services we provide; and for evaluating the adequacy and results of those services and accepting responsibility for them. We will advise you with regard to tax positions taken in the preparation of the tax returns, but the responsibility for the tax returns remains with you.

Management is responsible for making all financial records and related information available to us and for the accuracy and completeness of that information. Your responsibilities include adjusting the financial statements to correct material misstatements and confirming to us in the management representation letter that the effects of any uncorrected misstatements aggregated by us during the current engagement and pertaining to the latest period presented are immaterial, both individually and in the aggregate, to the financial statements taken as a whole.

You are responsible for the design and implementation of programs and controls to prevent and detect fraud, and for informing us about all known or suspected fraud affecting the company involving (1) management, (2) employees who have significant roles in internal control, and (3) others where the fraud could have a material effect on the financial statements. Your responsibilities include informing us of your knowledge of any allegations of fraud or suspected fraud affecting the company received in communications from employees, former employees, regulators, or others. In addition, you are responsible for identifying and ensuring that the entity complies with applicable laws and regulations. You are also responsible to notify us in advance of your intent to print our report, in whole or in part, and to give us the opportunity to review such printed matter before its issuance. With regard to the electronic dissemination of audited financial statements, including financial statements published electronically on your Internet website, you understand that electronic sites are a means of distributing information and, therefore, we are not required to read the information contained in those sites or to consider the consistency of other information in the electronic site with the original document.

Management of the company has the sole responsibility for maintaining appropriate documentation in support of its financial activities as dictated by its internal and external requirements, including those of regulatory bodies. In the course of our audit we accumulate and retain for limited periods in the form of working papers certain documentation supporting the procedures performed and findings in the course of those procedures. These working papers are solely our property and remain as such until disposed by us in accordance with our record retention policies. As an accommodation, we may, upon request by you or authorized representatives in appropriate circumstances, make information available to you, or your authorized representatives from our files. However, beyond the extent necessary to meet requirements imposed on us by professional standards and regulatory bodies, we assume no responsibility for maintenance of documentation supporting client financial activities.

Budget Finance Corporation
July 2, 2008                                                                                              Page 4


**Audit Administration, Fees, and Other**

We understand that your employees will provide us with the basic information required for our audit, including information specified in the *Client Assist Workpaper Listing*, Preliminary Fieldwork and in the *Client Assist Workpaper Listing*, Final Fieldwork and that you are responsible for the accuracy and completeness of that information. We also understand that your employees will prepare all cash, accounts receivable, and other confirmations we request and will locate any documents selected by us for testing.

We expect to begin our Preliminary Fieldwork on approximately July 2, 2008 and Final Fieldwork on approximately August 4, 2008. Our audit engagement ends on delivery of our audit report. Any follow-up services that might be required will be a separate, new engagement. The terms and conditions of that new engagement will be governed by a new, specific engagement letter for that service.

Our fees for these services will be based on our regular hourly rates in effect which includes out-of-pocket costs such as report production, typing, postage, etc. At the present time, we do not expect our fee to exceed $18,100. The fee estimate is based on anticipated cooperation from your personnel and the assumption that unexpected circumstances will not be encountered during the audit. If significant additional time is necessary, we will discuss it with you and arrive at a new fee estimate before we incur the additional costs. Our invoices for these fees will be rendered each month as work progresses and are payable on presentation. Interest will be charged on all accounts that have not been paid within 30 days after they are billed, at a rate of 1½% per month or any fraction of a month. The annual percentage rate is 18%. In accordance with our firm policies, work may be suspended if your account becomes 30 days or more overdue and will not be resumed until your account is paid in full. If we elect to terminate our services for nonpayment, our engagement will be deemed to have been completed upon written notification of termination, even if we have not completed our report. You will be obligated to compensate us for all time expended and to reimburse us for all out-of-pocket expenditures through the date of termination.

You may request that we perform additional services not contemplated by this engagement letter. If this occurs, we will communicate with you regarding the scope of the additional services and the estimated fees. We also may issue a separate engagement letter covering the additional services. In the absence of any other written communication from us documenting such additional services, our services will continue to be governed by the terms of this engagement letter.

If any dispute, controversy or claim arises in connection with the performance or breach of this agreement, either party may, on written notice to the other party, request that the matter be mediated. Such mediation will be conducted by a mediator appointed by and pursuant to the Rules of the American Arbitration Association or such other neutral facilitator acceptable to both parties. Both parties will exert their best efforts to discuss with each other in good faith their respective positions in an attempt to finally resolve such dispute or controversy.

Budget Finance Corporation
July 2, 2008                                                                          Page 5


Each party may disclose any facts to the other party or the mediator which it, in good faith, considers necessary to resolve the matter. All such discussions, however, will be for the purpose of assisting in settlement efforts and will not be admissible in any subsequent litigation against the disclosing party. Except as agreed by both parties, the mediator will keep confidential all information disclosed during negotiations.

The mediation proceedings will conclude within sixty days from receipt of the written notice unless extended or terminated sooner by mutual consent. Each party will be responsible for its own expenses. The fees and expenses of the mediator, if any, will be borne equally by the parties.

We appreciate the opportunity to be of service to you and believe this letter accurately summarizes the significant terms of our engagement. If you have any questions, please let us know. If you agree with the terms of our engagement as described in this letter, please sign the enclosed copy and return it to us.

                                           Very truly yours,

                                           *[signature]*

                                           Sikich LLP
                                           By: V. Gregory McKnight, CPA ABV
                                           Partner


RESPONSE:

This letter correctly sets forth the understanding of Budget Finance Corporation.

By: *[signature]*

Title: *[handwritten]*

Date: 7/15/2008

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

In Re Estate of                                    )
BUDGET FINANCE CORPORATION, Inc. )
                                                   )     Case No. 09-30450
                                                   )

AFFIDAVIT
AND DECLARATION OF
ATTORNEY BRYAN J. O'CONNOR

I, Bryan J. O'Connor, Attorney at Law of 221 N. LaSalle, Suite 1050, Chicago, Illinois 60601, on oath, do hereby declare that:

1. I am an Attorney at Law, duly licensed to practice before the Courts of the State of Illinois since 1977. I am a member of the bar of the United States District Court for the Northern District of Illinois and the United States 7th Circuit Court of Appeals. I have also appeared in federal courts in Arkansas, Indiana, and Mississippi.

2. I am a qualified Trial Counsel in the U.S. Federal Court for the Northern District of Illinois.

3. I have concentrated my practice in the area of litigation, including professional negligence and financial malpractice.

4. I do not hold, or represent any interest materially adverse to the Estate or of any class of creditors in this case for any reason.

5. I do not represent any of the creditors, past or present, of the Debtor.

6. I did not represent the Debtor Corporation or any of its owners, officers or employees in their business or personal affairs prior to the filing of the Bankruptcy.

7. I am not an owner, officer, employee, agent or other "insider" of the Debtor, its owners, officers or employees.

8. I have not been an investment banker for a security of the Debtor, or Attorney for such an investment banker in connection with any offer, sale or issuance of any security of the Debtor.

9. I believe that I meet all of the parts of the definition of disinterested person' set forth in Title 11 U.S.C. § 101 (14).

1


PLAINTIFF'S
EXHIBIT
C

10. I believe that I am well qualified to represent the Debtor in Possession in its potential adversary proceedings and I am willing to accept employment under the terms set forth in my retainer agreement attached hereto

11. I declare that, within the intent and meaning of Title 11 U.S.C. §327(a), to my knowledge and belief, I do not hold any interest adverse to the Debtor Corporation, and that I am a "disinterested person" with respect to the matter or matters upon which I propose to be employed.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this /6th day of August, 2011, at Chicago, Cook County, Illinois.

_____
Bryan J. O'Connor

Bryan J. O'Connor, Attorney at Law
221 N. LaSalle
Suite 1050
Chicago, IL 60601
(312) 236-1814

Signed and sworn to before me this
____ day of August, 2011.
_____
Notary Public

```
OFFICIAL SEAL
JOAN MANSCH
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:08/20/14
```

2